UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDY A. WATKINS<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO HOME MORTGAGE, INC, and TRANSUNION, LLC,<br><br>Defendants. | CIVIL ACTION<br><br>COMPLAINT 1:19-cv-04218<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** the Plaintiff, Randy A. Watkins ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Wells Fargo Home Mortgage, Inc. ("Wells Fargo") and TransUnion, LLC, ("TransUnion" and collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in this District.

### PARTIES

4. Plaintiff Randy A. Watkins is a consumer and a natural person over 18-years-of-age who, at all times relevant, owned the property located at 12801 Carriage Lane, #201, Crestwood, IL 60445 ("subject property").

1

5. Defendant Wells Fargo is a foreign corporation formed under the laws of the State of Delaware. Wells Fargo has a principal place of business located at 420 Montgomery Street, San Francisco, California 94104.

6. Wells Fargo is a furnisher of information as contemplated by 15 U.S.C. §1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is in the business of compiling and maintaining files relating to consumers' credit information bearing on a consumer's credit worthiness, credit standing, or credit capacity, and provides consumer reports to third parties, is authorized to do business in the State of Illinois, and is registered with the Illinois Secretary of State. It has a registered agent located in Illinois.

8. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by 15 U.S.C. §1681a(p).

9. TransUnion is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

## BANKRUPTCY CASE

10. Around 2006, Plaintiff executed a mortgage and note with Wells Fargo in the amount of approximately $130,000.00 ("subject loan," or "subject debt"), secured by the subject property.

11. On January 29, 2016, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 16-02853 ("bankruptcy").

12. Schedule D of the bankruptcy petition listed the subject loan, owed to Wells Fargo, in the amount of $96,435.00, secured by the subject property.

13. Also on January 29, 2016, Plaintiff filed his Original Chapter 13 Plan ("Original Plan").

14. On February 4, 2016, by virtue of listing Wells Fargo as a creditor, the Bankruptcy Noticing Center ("BNC") served Wells Fargo with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan.

15. On April 26, 2016, Plaintiff filed a Modified Chapter 13 Plan ("Modified Plan").

16. Plaintiff's Modified Plan proposed to treat Wells Fargo's claim as follows:

> "Debtor is surrendering the real property located at 12801 Carriage Lane, #201, Crestwood, Illinois to Wells Fargo Bank, N.A./Wells Fargo Home Mortgage, in full satisfaction of its secured claims."

17. On May 9, 2016, Plaintiff's Modified Plan was confirmed by the Honorable Judge Jacqueline P. Cox.

18. Plaintiff fully performed his duties and made all payments as was required under the terms of his confirmed Chapter 13 Plan.[1]

19. On October 5, 2016, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.

20. The Order of Discharge expressly states:

> "This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts....."

21. On October 7, 2016, the BNC served Wells Fargo with the Order of Discharge.[2]

---

[1] A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. Thus, any scheduled payments are governed by the confirmed plan and are made directly to the bankruptcy trustee for distribution to creditors.

[2] At no time did Wells Fargo file any proceedings to declare the subject debt as "non-dischargeable" pursuant to 11 U.S.C. §523 *et seq*.

22. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Wells Fargo.

23. On October 25, 2016, Plaintiff's bankruptcy case closed and the Trustee was discharged.

24. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus terminating the business relationship with Wells Fargo and any of its predecessors, successors and assigns.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO TRANSUNION

25. In early 2018, Plaintiff pulled his TransUnion credit report to make sure all creditors were reporting accurately. Plaintiff discovered that TransUnion and Wells Fargo were reporting the subject loan with a high scheduled monthly payment amount, a late payment status, an amount past due, and without a discharged status.[3]

26. The reporting of the subject loan was patently inaccurate, incomplete, and materially misleading because the subject loan was discharged in Plaintiff's bankruptcy and should not have been reporting as an open account, a "Balance" of greater than $0, with a "Monthly Payment" of greater than $0, an "Amount Past Due" of greater than $0, a "Payment Status" of 120-149 days late, and should have been reporting that the subject loan was discharged in Plaintiff's bankruptcy.[4]

---

[3] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."

[4] Pursuant to the CDIA guidelines, a Chapter 13 bankruptcy, once completed and discharged, should be reported as "Discharged through BK Chapter 13," a "Current Balance" of Zero, a "Scheduled Monthly Payment Amount" of Zero, and an "Amount Past Due" of Zero. *See* 2013 CDIA Manual; page 6-21.

### a. Plaintiff's Dispute Letter to TransUnion

27. On March 21, 2018, Plaintiff sent a detailed dispute letter to TransUnion requesting that his credit report be updated accurately reflect the account status, monthly payment, balance, payment status, past due amount, and days late of the subject loan.

28. Among other items, Plaintiff's dispute letter stated the following:

> "1) Wells Fargo Home Mortgage
>
> I want you to investigate the above account and contact them directly to update the incorrect information. The account status, monthly payment, balance, payment status, past due amount, times/days late, remarks, and payment history are wrong. It should be corrected to reflect a zero in the balance, a zero in the past due amount, and a zero in the monthly payment. You should also correct and update the remarks, times/days late, the payment status, and the payment history."

29. Upon information and belief, Wells Fargo received notice of Plaintiff's dispute letter and all enclosed supporting documents from TransUnion within five days of TransUnion receiving Plaintiff's dispute letter. See 15 U.S. Code §1681i(a)(2).[5]

### b. TransUnion's Response to Plaintiff's Dispute Letter

30. On April 18, 2018, TransUnion responded to Plaintiff's dispute letter by failing to correct the inaccuracies of the Wells Fargo Account.

31. Specifically Plaintiff checked his credit report on April 18, 2018 and discovered that TransUnion was reporting the subject debt as follows:

---

[5] Plaintiff attached his bankruptcy discharge order, driver's license, and social security card to his dispute letter.

32. Wells Fargo reported Plaintiff as having a "Balance" of $113,682, an "Amount Past Due" of $18,986, a "Payment Status" of 120-149 Days Late, a "Monthly Payment" of $733, and no notation of Plaintiff's bankruptcy discharge.

33. The reporting of the Wells Fargo trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is still personally responsible for, and obligated to pay a balance, had a past due amount, was severely late on his mortgage payment, still obligated to pay a monthly payment, and in an open account status. However, Plaintiff is no longer

6

personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on October 5, 2016.

34. Moreover, Wells Fargo and TransUnion failed to report the Wells Fargo trade line as discharged in bankruptcy.

## IMPACT OF CONTINUING
## INACCURATE REPORTING ON PLAINTIFF'S CREDIT FILES

35. The erroneous reporting of the Wells Fargo account paints a false and damaging image of Plaintiff. After it was provided notice by Plaintiff and Wels Fargo, TransUnion did not update the Wells Fargo trade line to accurately reflect the status of the subject loan.

36. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, credit capacity, and his ability to move forward after his bankruptcy discharge.

37. The inaccurate reporting of subject loan had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still personally liable and obligated to pay on the subject loan, rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

38. On May 6, 2019, in an effort to remedy the continued inaccurate and incomplete reporting of the subject loan and to validate the accuracy of Defendants' credit reporting, Plaintiff purchased a TransUnion 3-Bureau Credit Report and Score for $39.95.

39. The TransUnion 3-Bureau Credit Report revealed that Wells Fargo and TransUnion were still failed to report the subject loan as discharged in bankruptcy.

40. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants ceased or corrected the inaccurate and incomplete reporting of the subject loan after Plaintiff's dispute.

41. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering.

42. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to force compliance with the Fair Credit Reporting Act.

<u>**COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**</u>
(AGAINST WELLS FARGO)

43. Plaintiff restates and reallages paragraphs 1 through 42 as though fully set forth herein.

44. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

45. Wells Fargo is a "person" as defined by 15 U.S.C. §1681a(b).

46. Wells Fargo is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

47. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

48. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from TransUnion, and Plaintiff.

49. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, namely Plaintiff's discharge order, provided by Plaintiff, and TransUnion pursuant to 15 U.S.C. §1681i(a)(2).

50. Had Wells Fargo reviewed the information provided by Plaintiff, and TransUnion, it would have corrected the inaccurate designation of the subject loan, transmitting the correct information to TransUnion. Instead, Wells Fargo wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

51. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation of Plaintiff's dispute with TransUnion.

52. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation to TransUnion after being put on notice and discovering inaccurate and misleading reporting with respect to the subject loan and Plaintiff.

53. Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's credit files.

54. Wells Fargo failed to conduct a reasonable investigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from TransUnion under 15 U.S.C. §1681i(a)(1).

55. Despite the blatantly obvious error on Plaintiff's credit file, and Plaintiff's efforts to correct the error, Wells Fargo did not correct the errors or trade line to report accurately and completely. Instead, Wells Fargo wrongfully furnished and reported the inaccurate, incomplete, and misleading information after Plaintiff's dispute to one or more third parties.

56. A reasonable investigation by Wells Fargo would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit file.

57. Had Wells Fargo taken steps to investigate Plaintiff's valid dispute or TransUnion's request for investigation, it would have permanently corrected the erroneous and misleading credit

9

reporting. Plaintiff provided all relevant information in his request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

58. By deviating from the standards established by the mortgage servicing industry and the FCRA, Wells Fargo acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion.

**WHEREFORE,** Plaintiff RANDY A. WATKINS respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

59. Plaintiff restates and realleges paragraphs 1 through 58 as though fully set forth herein.

60. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

61. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

62. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

63. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free

of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

64. Plaintiff provided TransUnion with all relevant information and documentation in his request for investigation to reflect his bankruptcy discharge and that he is no longer personally liable for the subject loan.

65. TransUnion prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the subject loan with a monthly payment amount, an open account status, a past due balance, and a late payment status when in fact Plaintiff had received a bankruptcy discharge, owed no monthly payment amount on the subject loan, had no past due balance, and was not late on his payments.

66. Moreover, TransUnion failed to notate Plaintiff's account as discharged in bankruptcy.

67. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed and was discharged in bankruptcy and did not have a monthly payment amount owed or scheduled, was not late on his payments to the subject loan, and had no past due balance.

68. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. On numerous occasions, TransUnion has prepared a patently false and a materially misleading consumer report concerning Plaintiff. TransUnion had actual knowledge of Plaintiff's bankruptcy discharge after Plaintiff included his bankruptcy discharge order attached to his dispute letter on March 21, 2018.[6]

---

[6] In compliance with FCRA section 1681i(5)(D), TransUnion must implement an automated system through which furnishers of information to TransUnion may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file to other such consumer reporting agencies. This system, called e-OSCAR-web, is available for use by all data furnishers.

69. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

70. Had TransUnion taken any steps to investigate Plaintiff's valid dispute, it would have determined that subject loan and other debts were discharged in Plaintiff's bankruptcy on October 5, 2016.

71. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Wells Fargo. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to Wells Fargo regarding Plaintiff's dispute that TransUnion received from the Plaintiff.

72. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Wells Fargo with regard to the subject loan.

73. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

74. After Plaintiff's written detailed dispute, TransUnion had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject loan.

75. TransUnion knew that the inaccurate designation of the subject loan on Plaintiff's credit file under the Wells Fargo trade line having a scheduled monthly payment, a late payment status, and an amount past due after his bankruptcy discharge would have a significant adverse effect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing his bankruptcy.

76. Furthermore, TransUnion knew that failing to designate Plaintiff's account as discharged in bankruptcy after his bankruptcy discharge would have a significant adverse effect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing his bankruptcy.

77. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

78. Despite actual knowledge that Plaintiff's credit file was erroneous, TransUnion readily sold Plaintiff's inaccurate and misleading report to one or more third parties, thereby misrepresenting Plaintiff and, ultimately, Plaintiff's creditworthiness.

79. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

80. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

81. TransUnion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting his credit information.

82. TransUnion acted reprehensively and carelessly by failing to report the subject loan as discharged in bankruptcy, and reporting Plaintiff owing a scheduled payment amount, a late payment status, and an amount past due on the subject loan after Plaintiff was discharged in bankruptcy.

83. Upon information and belief, TransUnion has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

84. As stated above, Plaintiff was severely harmed by TransUnion's conduct.

**WHEREFORE**, Plaintiff RANDY A. WATKINS respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion of all adverse credit reporting;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award each Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: June 24, 2019

Respectfully Submitted,

/s/ Marwan R. Daher
/s/ Omar T. Sulaiman
/s/ Alexander J. Taylor
Marwan R. Daher, Esq.
Omar T. Sulaiman, Esq.
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
mdaher@sulaimanlaw.com
osulaiman@sulaimanlaw.com
ataylor@sulaimanlaw.com